UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUGO MARTIN RECINOS-RECINOS, *et al.*)

PLAINTIFFS,

v.

EXPRESS FORESTRY, *et al.*

DEFENDANTS.

Case No. C06-307-MAT

PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE BY PLUM CREEK TIMBER COMPANY, INC. WITH SUBPOENA DUCES TECUM

NOTE ON MOTION CALENDAR:
FRIDAY MARCH 10, 2006

## REPLY SUPPORTING PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE BY PLUM CREEK TIMBER COMPANY, INC. WITH SUBPOENA DUCES TECUM

Third party Plum Creek Timber Company, Inc. (hereinafter "Plum Creek") objects to Plaintiffs' documentary subpoena. Plum Creek's objections are unwarranted and do not justify non-compliance with the subpoena *duces tecum* served by Plaintiffs.

### I. Plaintiffs' Subpoena is Properly Tailored and Seeks Relevant Documents

As set forth fully in Plaintiffs' initial briefing, the information sought by the subpoenas is plainly relevant to underlying litigation against Defendants Express Forestry, Rick Thomas, and Sandy Thomas (hereinafter "Defendants"). Pl. Mot. to Enforce Subpoena 4-8. Wages due, work

PLAINTIFFS' MOTION TO ENFORCE
COMPLIANCE BY PLUM CREEK WITH        -1-
SUBPOENA DUCES TECUM

Columbia Legal Services
101 Yesler Way, Suite 300
Seattle, WA 98104
(206)-464-5933

performed and hours worked by migrant agricultural workers are the central issues of dispute in that litigation. See Ex. 1. As Plum Creek acknowledges, this work occurred on lands they owned or controlled. Plum Creek Opp. at 6.

Documents showing the location, timing, and type of work performed on Plum Creek's land are directly relevant to determining the lawful prevailing wage due to Plaintiff class members. Pl. Mot. to Enforce Subpoena 5-6; see also U.S. Department of Labor Employment & Training Administration, *Foreign Labor Certification Data Center*, www.flcdatacenter.com. Without specific information concerning where Plaintiffs worked, what kind of work they did and when such work was performed, there is no way to determine the prevailing wage they should have been paid. Plaintiffs have successfully discovered this information from Defendants' other timber company customers. Such information is typically contained in planting contracts and other written agreements between timber companies like Plum Creek and contractors like the Defendants. See Ex. 9 (timber company contracts discussing work to be performed by Express Forestry and locations). For this reason, Plaintiffs' subpoena of these and other documents evidencing location, dates, and type of work performed is tailored to seek relevant information.

Plaintiffs' allegations that the Defendants' records of hours worked are false and inaccurate is at the heart of the underlying case. Ex. 1 at 8-15. It is for precisely this reason that Plum Creek's offer to forward to Plaintiffs the payroll documents Express Forestry provided to Plum Creek pursuant to 29 U.S.C. § 1821(d-e) is, by itself, inadequate. Rather, the Plaintiffs seek to probe the validity of these records of "officially reported" hours by checking records produced by Defendants against those of independent sources other than Defendants. The start and stop

PLAINTIFFS' MOTION TO ENFORCE
COMPLIANCE BY PLUM CREEK WITH       -2-
SUBPOENA DUCES TECUM

Columbia Legal Services
101 Yesler Way, Suite 300
Seattle, WA 98104
(206)-464-5933

times of work and the duration of interruptions in the work day are hotly disputed in this case. Timber company documents such as inspection reports or summaries often record the dates and times at which a particular timber company inspector was in the field with a particular crew, or the times during which particular work took place. See, e.g., Ex. 10 (inspection reports filled out by Weyerhauser inspector showing field location, crewleader name, and time of herbicide application). Plaintiffs thus look to inspection and summary documents produced by Defendants' customers, like Plum Creek, as a source of neutral information to corroborate Plaintiffs' accounts of their work hours, to impeach the Defendants' records of hours worked, and to identify which crews were working at which locations on what days during a given time period.

In addition, Plaintiffs assert that they should have been paid for time spent performing various preparation or clean-up tasks. Plaintiffs' subpoenas to other timber companies have unearthed documents which show that, <u>under the terms of their contracts with timber companies like Plum Creek</u>, Defendants' crews had to pick up tree seedlings at coolers before the planting day began, return leftover trees to the coolers, and dispose of trash at the end of the workday. See, e.g., Ex. 9. Such evidence is corroborative of Plaintiffs' claims that preliminary and postliminary work lengthened their compensable workday.

Plum Creek's assertion that the per-acre pricing information contained in such contracts is irrelevant to this wage litigation is incorrect. Plum Creek Opp. 8. Express' company policy indicates that crew supervisors' bonus pay was tied to achievement of the profit margin written into their contracts with customers like Plum Creek. See, e.g., Ex. 11 (Express Forestry Company Policy for Foreman, p. 1-2 ("Your record will be examined for profitability and

PLAINTIFFS' MOTION TO ENFORCE
COMPLIANCE BY PLUM CREEK WITH            -3-
SUBPOENA DUCES TECUM

Columbia Legal Services
101 Yesler Way, Suite 300
Seattle, WA 98104
(206)-464-5933

production. The acres or miles you covered and passed inspection are listed and then adjusted by the expenses used to run your crew. All [costs] are considered when figuring any bonus. You must keep expenses low to keep pay high.") Express' pay system thus created strong incentives for crew leaders to underreport hours in order to ensure that the Express profited from its contracts. As such, the Plaintiffs are entitled to explore the correspondence between contract rates and reported work hours for correlations that would indicate systematic underreporting of employee hours in order to increase Express Forestry's profit margin.

Contrary to Plum Creek's assertion, Plaintiffs do not argue that their subpoena is valid because "everybody else is doing it". Plum Creek Opp. at 4. Rather, the fact that compliance with identically phrased subpoenas issued to similarly situated companies has produced important, admissible evidence indicates that the Plaintiffs' subpoena is properly calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26 (b)(1).

II. **Plum Creek is Likely the Only Source for Many of the Documents Sought by Plaintiffs' Subpoena**

Plaintiffs' efforts at traditional discovery in this case were dealt a serious blow when Defendants informed Plaintiffs that virtually all relevant documents sought by Plaintiffs' requests for production had been stored in Defendants' Mississippi beach home in August 2005 and were destroyed by Hurricane Katrina. Ex. 12 (Defendants' Responses to Plaintiffs' Second Interrogatories, p. 2-3). Accordingly, Plum Creek is likely the only source of documents that pertain to work performed by Express Forestry crews in satisfaction of Plum Creek contracts.

Thanks to other timber companies' cooperation with identical subpoenas, Plaintiffs can piece together some fragments of the record that underlies Defendants' accounts of hours

worked. See, e.g., Ex. 14 (Express Forestry daily and weekly crew sheets, produced by Weyerhauser pursuant to an identical subpoena). The Express-related documents produced by other timber companies have enabled Plaintiffs to determine how Defendants recorded hours and production, to understand the inaccuracies in these records, and to conduct more meaningful depositions of Defendants' supervisors.

Plaintiffs have taken extraordinary steps to unearth all relevant documentation and information available despite Hurricane Katrina. See, e.g., Ex 13 (Order of Magistrate Judge Knowles, February 16, 2006, ordering Defendants to allow Plaintiffs' expert access to their computer system for extraction of documents). Defendants have persistently maintained, over several months of litigation, that most documents related to Plaintiffs' work, such as weekly and daily planting summaries, were completely destroyed by Hurricane Katrina. See Ex. 12, at 2-3. Because Defendants are unable to produce broad categories of relevant documents, it is vital that Plaintiffs be provided the relevant records possessed by Plum Creek.

### III. Plum Creek's Novel Invocation of *Res Judicata* is Unsupported by Case Law

Plum Creek also claims that the rights of the Plaintiffs in this action have been compromised by a completely distinct action, brought by different Plaintiffs (employed by different labor contractors) against different Defendants, in a different Court in the year 2000. Plum Creek Opp.3, 6, 8, 11-12; See also Plum Creek Ex.B at 2-4; Ex.C at 3-4; Ex. E at 3. The lynchpin of this theory seems to be that one of the four lawyers appearing on behalf of the Plaintiffs in the instant case represented other Hispanic migrant workers in a 2000 case against Georgia-Pacific, some of whose lands Plum Creek eventually acquired. Ids. Plum Creek's

PLAINTIFFS' MOTION TO ENFORCE
COMPLIANCE BY PLUM CREEK WITH        -5-
SUBPOENA DUCES TECUM

Columbia Legal Services
101 Yesler Way, Suite 300
Seattle, WA 98104
(206)-464-5933

| 1 | creative theory is utterly unsupported by law. Plum Creek's attempt to bully these Plaintiffs |
|---|---|
| 2 | (who performed most of their work <u>after</u> the issuance of the Georgia-Pacific decision) into |
| 3 | executing waivers of claims in exchange for Plum Creek's basic compliance with the mandates |
| 4 | of Rule 45 is at once absurd and abusive. <u>See</u> Plum Creek Ex. E at 3 ("We would be willing to |
| 5 | discuss with you some arrangement in which you would recognize the preclusive effect of this |
| 6 | Order [<u>Lizarraga-Ruiz v. Georgia-Pacific</u>] and ensure that our client would not be subjected to |
| 7 | litigation over these or related matters, if that would assist in helping us reach an agreement over |
| 8 | these subpoenas.") |
| 9 | Moreover, Plum Creek willfully misreads the holding of the <u>Lizarraga-Ruiz</u> decision to |
| 10 | indicate that "prior litigation shows that Plum Creek's actions are not relevant to an action such |
| 11 | as the one Plaintiffs' counsel brought against a contractor such as Express" is unjustified. Plum |
| 12 | Creek Opp. 8.; Plum Creek Ex. A at 28. To the contrary, the <u>Lizarraga-Ruiz</u> Court recognized |
| 13 | that timber company representatives are often present to observe tree planting work. Plum Creek |
| 14 | Ex. A at 18-19. In this case, Plum Creek personnel were the lone neutral third party witnesses to |
| 15 | the work Plaintiffs performed on their land. The records sought by Plaintiffs' subpoena are |
| 16 | patently relevant to Plaintiffs' claims arising from work performed on Plum Creek's land. |

### **CONCLUSION**

18  For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order
19  requiring Plum Creek to comply with their subpoena *duces tecum*.

20

21           Respectfully Submitted,

PLAINTIFFS' MOTION TO ENFORCE
COMPLIANCE BY PLUM CREEK WITH     -6-           Columbia Legal Services
SUBPOENA DUCES TECUM                             101 Yesler Way, Suite 300
                                                  Seattle, WA 98104
                                                   (206)-464-5933

1            HUGO MARTIN RECINOS-RECINOS

           **s// Nicholas B. Straley, Esq.**
Nicholas B. Straley
Washington State Bar No. 25963
Columbia Legal Services
101 Yesler Way, Suite 300
Seattle, WA 98104
206-464-5933
206-382-3386 (fax)

Kristi Graunke
*Pro Hac Vice*
Georgia Bar No. 305653
Mary C. Bauer
*Pro Hac Vice*
Virginia Bar Number 31388
Andrew H. Turner
*Pro Hac Vice*
Virginia Bar Number 48853
Immigrant Justice Project
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
334-956-8200
334-956-8481 (fax)

Attorneys for Movants

PLAINTIFFS' MOTION TO ENFORCE
COMPLIANCE BY PLUM CREEK WITH     -7-
SUBPOENA DUCES TECUM

Columbia Legal Services
101 Yesler Way, Suite 300
Seattle, WA 98104
(206)-464-5933

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of March, 2006, a true and correct copy of the foregoing document has been served on the following counsel via FAX and 1st Class U.S. Mail, postage prepaid.

<u>Attorneys for Plum Creek Timber Company, Inc.:</u>
Rosemary Daszkiewicz
Cairncross & Hempelmann, P.S.
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
FAX (206) 587-2308

Robert Buckler
Evan H. Pontz
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia 30308-2216
FAX (404)-962-6656

<u>Attorney for Defendants Express Forestry, Rick Thomas, and Sandy Thomas:</u>
J. Larry Stine
Wimberly, Lawson, Steckel, Weathersby, & Schneider, P.C.
3400 Peachtree Road, Suite 400
Atlanta, GA 30326
FAX (404)-261-3707

_____
Kristi L. Graunke, Attorney for Movants